(125 So. 791)

### CHANDLER v. STATE. (3 Div. 655.)

Court of Appeals of Alabama. Jan. 21, 1930.

L. A. Sanderson, of Montgomery, for appellant.

Charlie C. McCall, Atty. Gen., and J. W. Brassell, Asst. Atty. Gen., for the State.

RICE, J. Appellant was indicted, tried, and convicted for, and of, the offense denounced by Act of the Legislature of Alabama approved September 6, 1927 (Gen. Acts Ala. 1927, p. 704), the act which makes it a felony to "transport in quantities of five gallons or more any of the liquors or beverages, the sale, possession or transportation of which is now prohibited by law in Alabama."

The indictment was correctly drawn, properly found—so far as appears—and the trial of the simple issue involved presented nothing of difficulty. The testimony on the part of the state, given by the two officers who arrested the appellant, was clear, positive, and, if believed by the jury, conclusive of the guilt of appellant, as charged.

Briefly, the story told by the said officers was that they hid under a dwelling house adjoining that in which appellant, with a number of others, was residing and watched; that at about 7:30 or 8:00 o'clock, at night, appellant came out of the house, entered, and drove off in a Buick automobile; that something like an hour and three-quarters later appellant returned, still driving the said Buick; that appellant drove the Buick away, from the front of the house, but that when he returned he "came off of the public highway" (meaning a street in the city of Montgomery), and "drove in the yard through the back gate (to) within four feet of the back door steps" (meaning the back door steps of the house in which appellant lived); that there were in the Buick, when appellant drove in and stopped near the back door steps, five ten-gallon kegs of whisky; that they knew appellant well, had seen him often before, and recognized him thoroughly; that appellant got out of the Buick, went in the house, and that they (the officers) then separated—one going to the front of the house, and the other to the back; that, after gaining entrance to the house, on the authority of a search warrant, after some little time, they placed appellant under arrest, etc.; that appellant alone was in, and driving, the Buick car containing the whisky.

It was all very simple and clear, and, if the jury believed the state's testimony, given by these two officers, the conviction of appellant was bound to follow.

As against this testimony, appellant and several of those residing in the house with him, and at least one witness, maybe two, who were "visiting" there that night, testified that appellant was in the house during all of the time covered by the testimony on the part of the state; that he had nothing to do with driving the Buick car, above referred to, into the back yard with its load of whisky, but that the whisky was brought there by one Hand, whom they said resembled appellant very much, and who was, at the time, domiciled there in the same house with appellant, was related to him, and had admitted to all the parties so testifying that he (Hand) was the sole person responsible for the load of whisky, above referred to, being brought into the back yard, etc.; but that Hand left the state soon after appellant's arrest, and was beyond the jurisdiction of the court at the time of appellant's trial, etc.

■ The issue made by the conflicting testimony—the state's and appellant's—was, we repeat, simple, and was, of course, for the jury. But the state was allowed to go further and introduce testimony, over appellant's strenuous objection, that at about 3 o'clock in the afternoon of the day on which appellant was arrested as above mentioned the same two officers who arrested him "stopped him" while he was driving a "Cadillac touring car" at a place entirely removed from the scene of his arrest. In the same way the said officers were allowed to testify as to what was in the said "Cadillac," and that appellant stated to them then (at 3:00 o'clock in the afternoon) that he was "then going after a load" (meaning a load of whisky). Perhaps it was competent to allow the said witnesses to say that they saw appellant in the afternoon, conversed with him, etc., as bearing on their ability to identify him that night, when he drove up in the Buick with the load of whisky, as they said he did; but what he "had in the Cadillac," and where "he told them he was going," especially, that he told them he was then going after a load" (of whisky), etc., at an entirely different time and place, and when, obviously, there could have been no connection between the offense for which he was on trial and said matters and occurrences, were matters entirely irrelevant to the issue being tried, and incompetent as evidence against him, and were, in the nature of things, calculated to prejudice appellant in the eyes of the jury. Exceptions were duly reserved to each of the rulings allowing these matters in evidence, and for the manifest error in said rulings the judgment of conviction must perforce be reversed.

■ We do not think it was competent to allow testimony as to the finding of the various articles, all potentially a part of a "bootlegger's" outfit, which were found on the porch, etc., of the house where appellant, with a number of others, some of whose records are written in this court, were living, at the time; but it might possibly be said that this testimony was, as to matters concerning the res gestæ, surrounding appellant's arrest there at said house, immediately, or a short while, at most, after he was alleged to have parked the Buick, loaded with whisky, at the back door. At any rate, we would not feel constrained to reverse the judgment of conviction solely on account of the admission of this testimony.

Upon another trial, let the testimony be confined to the issue made by appellant's plea of not guilty to the charge made in the indictment, and there should arise no questions of law of any difficulty whatsoever.

For the errors pointed out, the judgment

must be, and is, reversed, and the cause remanded.

Reversed and remanded.